# 𝔐𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## BERKELEY & HARRISON v. TINSLEY.

### April 7th, 1892.

1. NEGOTIABLE INSTRUMENTS—*Accommodation indorser — Withdrawal of indorsement Exception.*—It is a general principle that an indorser of an accommodation note may withdraw his endorsement at any time before the note is discounted, unless rights for valuable consideration have in the meantime attached in others.

2. IDEM—*Rights of pledgees—Obligation of indorser.*—But where such note has been pledged and delivered to a bank to secure collaterally its advancements made in good faith, the bank can recover against the indorser what was *bona fide* advanced by the holder, but the indorsers' obligation is limitated to this.

3. IDEM—*Case at bar.*—Maker of note indorsed for his accommodation, unable to get it discounted, left it at the bank as collateral security for a loan for a much less sum by the bank. Maker then bought goods through B. & H. on the credit given him by the note. Accommodation indorser offered to pay the loan and withdraw her indorsement, the note not having been discounted. Bank refused, but assigned same to B. & H., the agents of maker's creditors, upon their payment of said loan. In action by B. & H. upon the note;

HELD:

> They could recover nothing more than the amount they paid on the loan to the maker.

Error to judgment of corporation court of city of Danville, rendered October 5th, 1889, in an action wherein the plaintiffs in error, L. C. Berkeley, Jr., and James P. Harrison, partners as Berkeley & Harrison, suing for the use of John W. Carter & Co. and others, were plaintiffs and A. C. Tinsley and Mrs. Eliza R. Buntin were defendants. Opinion states the case.

VOL. LXXXVIII—126

*Peatross & Harris* and *Berkeley & Harrison*, for plaintiffs in error.

*Green & Miller* and *Withers & Barksdale*, for defendants in error.

LACY, J., delivered the opinion of the court.

The defendant in error, A. C. Tinsley, on the 3rd day of October, 1888, at Danville, Va., made his negotiable note at four months for $3,500, payable to Eliza R. Lee or order, without offset, at the Commercial Bank, of Danville, Va. Eliza R. Lee indorsed this note, and delivered it to the drawer, to be discounted at bank, to enable him to carry on the mercantile business in the store-house rented by him of the said Lee. Tinsley took this note to the bank to be discounted, but the bank could not or did not discount it. Tinsley borrowed $630.62 of the bank, and left the note as collateral. He bought goods from certain parties, who are plaintiffs in error, through Berkeley & Harrison, who trusted him upon his expectation of getting this note discounted, and out of the proceeds paying them for their goods. Neither they nor the bank nor any other person ever discounted the note. It was never negotiated, and never passed into the hands of third parties for value without notice. The drawer sought to have the note discounted, and tried to employ lawyers to get it done, that he might get the money on it; but, although Mrs. E. R. Lee was a solvent person, nobody could be found who would take the note and pay the money for it. The creditors of the drawer claimed only a promise by Tinsley, the drawer, to pay them out of the proceeds of the note when discounted. In the meantime Mrs. Lee, who was a purely accommodation endorser, having married the defendant in error, Buntin, and having learned the insolvency of Tinsley, the drawer, or for reasons satisfactory to herself, sought to withdraw her indorsement, and so notified

the bank. But, hearing from the bank that the note had been then pledged as collateral to secure the loan made to him by the bank of $630.62, she then offered to pay to the bank the amount of the said loan, and demanded the surrender of the note. But the bank, claiming to hold the note as the agent of Tinsley, refused to receive the money, and refused to deliver the note, except by the direction of Tinsley. Tinsley refused to surrender the note, and convened the parties who had sold him the goods on credit, and they all together did not have claims aggregating the amount of the note, but they contributed the $630.62 due the bank, paid, or secured to be paid, that to the bank, and the bank undertook to assign the note to Berkeley & Harrison for the benefit of these parties; and Berkeley & Harrison brought suit upon it, its due-day having arrived, and it having been presented for payment at the said bank, and protested for non-payment. Upon the trial the defendants demurred to the evidence; and, all matters of law and fact being submitted to the court, a jury being waived, the court gave judgment only for the amount of $630.62, the amount advanced on the note before withdrawal by Mrs. Lee as indorser before maturity. The plaintiffs, Berkeley & Harrison, thereupon applied for and obtained a writ of error to this court.

There is no dispute about the material facts of the case. Counsel state them in a different order, to illustrate their view of the law, but the same facts are relied on by each side to the controversy. The first question of law which arises here is as to the effect of the withdrawal of the indorser before discount, or the negotiation of the note in the hands of third parties for value without notice. This is not what is termed " business paper " with successive indorsers, but accommodation paper offered by the maker for discount for his benefit; and the indorser is bound as his surety so far as his indorsement binds him as such, and so long as this indorsement binds him. It is a general principle that an indorser of an accommodation

note may withdraw his indorsement at any time before the note is discounted, unless rights for valuable consideration have in the meantime attached in others. As a general rule, the *locus pœnitentiæ* is never taken away until the contract is complete; and until the discount of accommodation paper, a note is but a blank piece of paper. Such notes are placed in the bank or in the hands of the maker to be discounted, in confidence, at the time of his solvency. "Yet [as was said by Judge Tucker in *May* v. *Boisseau*, 8 Leigh, 164] I have never yet heard a doubt of the right of the indorsers to withdraw them, or to strike out their indorsement at any time before discount, when the failing circumstances of the maker render such a measure prudent. Until the discount of the note of the 26th of May, therefore, the indorser, Peter F. Boisseau, had a right to withdraw his indorsement, to forbid the discount upon his credit, and to absolve himself from all responsibility, unless some circumstances can be shown which deprive him of the benefit of this general principle." And, as was said by Judge Brockenbrough in the same case: "Although a negotiable note on its face imports a debt due from the maker to the payee, and the indorsement imports a debt due from the first endorser to the second, yet it is agreed on all hands that an accommodation note is not available as a security for money until it is issued or negotiated to some real holder for valuable consideration." Until such a note is negotiated it is a mere blank piece of paper, in no way binding on either maker or indorser. Under ordinary circumstances, he who indorses an accommodation note has the right to retract his endorsement at any time before it is negotiated. His consent to be indorser is necessary to make him such. He cannot be compelled to indorse whether he will or no; and as the note is a mere blank piece of paper until it passes into other hands for valuable consideration, it follows that he has the same right to retract the indorsement already made as he had to refuse his indorsement in the first instance; that is, his indorsement and his

continuing to be so are alike voluntary until rights arise by the negotiation to third parties. In this case the indorsement was withdrawn by notice to the holder, who was not, however, a holder for valuable consideration, but who held it as the agent of the maker, and held, therefore, as the maker held it, subject to this right of the indorser. If it had been discounted, it would not have bound the indorser after this withdrawal; but it was not discounted, but assigned by the bank to third parties. Upon what principle did this holder have the right to assign this note? It was clearly not the owner of it, and had no further concern with it than so far as it had acquired rights to it by advancements made on it while in pledge as collateral security. This right the indorser never denied, but offered to pay in full such advancements as had been made on it in good faith. Judge Carr, in *Whitworth* v. *Adams*, 5 Rand. (Va.) 342, speaking of the indorser of an accommodation note, said: " I get a friend to lend me his credit. He executes a note to me for $1,000, payable in three months, which I indorse. While I hold this paper it is nothing. It imposes no obligation on my friend. It is a mere preparation which I am making to get money. When I part with it then I give it being, and stamp its character by the nature of the contract which I make." *Downes* v. *Richardson*, 5 Barn & Ald. 674; Daniel, Neg. Inst. (1st Ed.) p. 150, § 190. Before the negotiation of the note the indorser had retracted her indorsement, and it could not afterwards have been discounted, so as to charge her as such indorser. But as the note had been pledged and delivered to the bank to secure collaterally its advancements made in good faith, the bank could recover against the indorser what had been *bona fide* advanced by the holder, but the obligation of the indorser is limited to this. Daniel, Neg. Inst., p. 627, § 832. The creditors represented by Berkeley & Harrison were not purchasers for value without notice of the foregoing facts, but with full notice of them all, they obtained the note from the bank after the withdrawal of the indorser;

and as to her they obtained only what the paper was in the hands of the bank as to their claims as against the indorser— a blank piece of paper. Tinsley delivered it to them, and, so far as he is concerned, he admits his obligation, which, however, is not of much value, as they have not cared to take judgment against him—a point which is made by the defendants in error, but is passed by as immaterial in this case. The plaintiffs in error have no valid claim against Mrs. Lee on this note under the stated circumstances, in any view of the question. The judgment of the corporation court of Danville, for the foregoing reasons, is right, and must be affirmed.

JUDGMENT AFFIRMED.